# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 24-0421V

|  |  |
|---|---|
| DANIEL BRUNELL, | Chief Special Master Corcoran |
| Petitioner, |  |
| v. | Filed: February 23, 2026 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |  |
| Respondent. |  |

*Jonathan Joseph Svitak, Shannon Law Group, P.C., Woodridge, IL, for Petitioner.*

*Lynn Christina Schlie, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On March 19, 2024, Daniel Brunell filed a Petition seeking compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"); *see* Section 11(c)(1)(D)(i). Petitioner alleges a right-sided shoulder injury related to vaccine administration ("SIRVA") following his receipt of a seasonal influenza ("flu") vaccine on October 17, 2022. Petition at Preamble, ¶ 7; 42 C.F.R. §§ 100.3(a), (c)(10)(iii). The claim was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters in August 2024.

---

[1] Because this opinion contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the opinion will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, I find that the vaccine at issue was more likely than not administered in Petitioner's right shoulder/arm, as alleged. In the absence of any other objections from Respondent, and based on an independent review of the evidence, I conclude that Petitioner has established entitlement to compensation for a Table SIRVA.

## I.   Procedural History

After the claim's assignment to SPU, Respondent formally opposed compensation for a right-sided SIRVA, because the vaccine administration form ("VAR") indicated a "left arm" situs. Rule 4(c) Report filed Dec. 9, 2024, ECF No. 15, at 6. I ordered Petitioner to show cause why his claim should not be dismissed for that reason. Show Cause Order filed May 20, 2025, ECF No. 17. Petitioner did not file any other evidence bearing on situs or entitlement.[3] The parties completed briefing, rendering the case ripe for adjudication. *See* Petitioner's Response to Order to Show Cause filed Aug. 7, 2025, ECF No. 21 (hereinafter "Brief"); Respondent's Response filed Sept. 22, 2025, ECF No. 22, Petitioner's Reply filed Oct. 7, 2025, ECF No. 23; Joint Status Report filed Jan. 28, 2026, ECF No. 25.

On February 20, 2026, I held an expedited entitlement hearing on the disputed situs issue. After some discussion and questioning, I issued an oral ruling constituting my findings of fact and conclusions of law, pursuant to Section 12(d)(3)(A). An official recording of the proceeding was taken by a court reporter, although a transcript has not yet been filed in this matter. I hereby fully adopt and incorporate that oral ruling as officially recorded.

## II.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

---

[3] Petitioner filed additional medical records as Ex. 11 on August 6, 2025, ECF No. 19. Those records pertain to unrelated medical conditions and they are "not relevant to Petitioner's SIRVA claim" according to Respondent. Response filed Sept. 22, 2025, ECF No. 22.

[4] In summary, a petitioner must establish that he or she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered an injury or its residual effects for more than six months, died from the injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for the injury. *See* § 11(c)(1)(A)(B)(D)(E).

Section 11(c)(1) also contains requirements concerning the type of vaccination received and where it was administered, the duration or significance of the injury, and the lack of any other award or settlement. *See* Section 11(c)(1)(A), (B), (D), and (E). With regard to duration, a petitioner must establish that he suffered the residual effects or complications of such illness, disability, injury, or condition for more than six months after the administration of the vaccine. Section 11(c)(1)(D).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381 at 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 at 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

I am resolving the fact dispute in question on the filed record. The Vaccine Act and Rules not only contemplate but encourage special masters to decide many matters on the papers where, in the exercise of their discretion, they conclude that doing so will properly and fairly resolve the issue. *See* 42 U.S.C. § 12(d)(2)(D); Vaccine Rule 8(d). Indeed, the decision to rule on the record in lieu of a hearing has been affirmed on appeal. *Kreizenbeck v. Sec'y of Health & Hum. Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2020);

4

*Hooker v. Sec'y of Health & Hum. Servs.*, No. 02-472V, 2016 WL 3456435, at *21 n.19 (Fed. Cl. Spec. Mstr. May 19, 2016) (citing numerous cases where special masters decided cases on the papers in lieu of hearing and those decisions were upheld).

### III.    Finding of Fact

The record preponderantly supports a finding that the October 17, 2022 vaccination was administered in Petitioner's right arm. I make these findings after a complete review of the record to include all medical records, testimonial evidence, Respondent's Rule 4(c) Report, and both parties' briefing and argument at the February 20, 2026 expedited hearing. Specifically, I base my findings on the following evidence:

- Petitioner was born in 1968. He had no history of right shoulder pain or dysfunction. *See generally* Exs. 3-8; Ex. 1 at ¶¶ 11-13.

- Petitioner received the at-issue flu vaccine at a Roe Family HealthMart Pharmacy in Utah on October 17, 2022. Ex. 2 at 1. A printed vaccine consent and administration form (hereinafter the "VAR") reflects Petitioner's handwritten patient information and signature, then the following information:

**Vaccination Record: (for administrative use only)**

| Vaccine | Route and location | Date Administered | Vaccine Manufacturer | Lot Number and expiration | Vaccine administered by |
|---------|--------------------|--------------------|----------------------|---------------------------|--------------------------|
| Flu | left arm | 10/17/22 | Seqirus | Lot A356148 Exp 2023-APR-30 | ap |
| | | | | | |

Ex. 2 at 1.

- Eight days post-vaccination, on October 25, 2022, Petitioner called the Intermountain Health Family Medicine Clinic requesting an urgent appointment for **"Shoulder pain since receiving flu vaccine on 10/17/22."** Ex. 3 at 1461 (emphasis added).

- Fourteen days post-vaccination, on October 31, 2022, Petitioner attended the first in-person medical appointment for this complaint. The appointment was apparently brief – with the record (made by an intermountain registered nurse) reading, in full: "**Pt reports pain in R shoulder area post-flu immunization injection 2 weeks prior, resulting in limited ROM d/t pain.** No external s/sx of injury or damage noted. [Primary care physician ("PCP")] briefly evaluated pt RUE movement and advised to take anti-inflammatory meds round the clock for a couple of days along

with ROM exercises and return to clinic in 2 weeks. RN scheduled pt for return visit with [PCP]." Ex. 3 at 2431 (emphasis added).

- At the November 15, 2022 follow-up appointment with the PCP, Petitioner reported that the October 17th vaccine had been given **"right into the tendon… after that he had a burning pain in his shoulder with movement, this has persisted off and on since that time…"** Ex. 3 at 2354 (emphasis added). Petitioner denied having "any fall trauma or other injury" (although he acknowledged "using his shoulder a lot" while remodeling his home and working as a long-haul truck driver). *Id.* The PCP assessed "right anterior shoulder pain" potentially representing arthritis, but he recommended further evaluation by an orthopedics specialist. *Id.*

- At a December 14, 2022 orthopedics initial evaluation for right shoulder pain,[5] Petitioner reported that he had **"received his flu shot at Walgreens [sic] 8 weeks ago. The technician injected him very high on the upper arm. The following day, pain was so severe he could not lift or use his arm…"** Ex. 5 at 4 (emphasis added). The orthopedist recorded that on physical examination of the right shoulder: "Skin is intact. There is no erythema or induration about his needle site. There is tenderness there and a little tenderness over the biceps tendon. He is strong to global shoulder and Whipple exam." The orthopedist assessed Petitioner's right shoulder injury as a "case of SIRVA which is 7 or 8 weeks in duration." Petitioner was prescribed oral steroids and told to return to the orthopedics office as needed. *Id.*

- After a treatment gap of approximately four months, on May 15, 2023, Petitioner underwent an MRI of his right shoulder, in light of his reported "pain and limited range of motion." Ex. 6 at 4-5; *see also id.* at 2 (reflecting that Petitioner paid out of pocket for the MRI).

- At a May 15, 2023 "imaging follow-up" appointment, an orthopedics nurse assessed that the MRI showed a "right shoulder massive rotator cuff tear with subacromial impingement and biceps tendinosis" and "significant synovitis," which findings "could be related to SIRVA." Ex. 5 at 8. The nurse recommended, and Petitioner agreed to, future arthroscopic surgery. *Id.*

- The aforementioned orthopedist performed Petitioner's right shoulder surgery on June 20, 2023. Ex. 5 at 12-14. Afterwards, Petitioner attended 20 sessions of post-operative physical therapy between August 3 – November 20, 2023. Ex. 7 at 95-134. His shoulder was also reevaluated and assessed to be recovering at orthopedics appointments through January 31, 2024. Ex. 7 at 137-38.

---

[5] Petitioner had been seen at the orthopedics practice for previous unrelated medical concerns. *See e.g.*, Ex. 5 at 50-123.

6

- In a June 2024 witness statement,[6] Petitioner recalled that on October 17, 2022, the pharmacy employee "indicated my dominant right arm and just asked me if this arm was okay, [to] which I responded affirmatively because I was not especially worried at that time." Ex. 1 at ¶ 14. Petitioner recalls suffering immediate pain at the time of vaccination, which persisted over time. *Id.* at ¶¶ 14-21. Petitioner states that on or about March 1, 2024, he obtained a copy of the vaccine consent form and discovered the notation of a "left arm" situs. *Id.* at ¶ 54. Petitioner contends that this information is "erroneous," and he immediately notified the pharmacy of his concern, but he provided the form as it was originally created to his attorney. *Id.*

Respondent's sole objection to the Table SIRVA claim is that the VAR indicates administration in Petitioner's non-injured *left* arm. Rule 4(c) Report at 6 and Response at 3-6 (providing that 42 C.F.R. § 100.3(c)(10)(iii) requires Petitioner to demonstrate that his symptoms were limited to the shoulder in which he received the flu vaccine). Respondent correctly notes that this "left arm" situs notation was not computerized but handwritten – and such notations are typically afforded greater comparative weight, because they logically involve more specific action by the administrator, and because they may be more contemporaneous to the actual fact of administration than a computer-generated record. Response at 4-5 (internal citations omitted). Respondent also argues that that while the VAR photocopy's quality is not ideal, Petitioner has not identified any obvious lack of "due care" or other obvious inaccuracies within the record that would render the "left arm" notation less likely to be reliable. *Id.* at 5. Finally, there is not sufficient evidence that an orthopedics appointment roughly two months post-vaccination observed or documented any lingering evidence of a right-sided vaccination. *Id.* at 5-6.

While the "left arm" notation is somewhat problematic for Petitioner, it is not necessarily dispositive just based on its handwritten character or status as the "first-created" record of the vaccination. A factual finding must be made on the totality of *all* case evidence, which here tips in Petitioner's favor. In particular, Petitioner had no history of right shoulder pain or dysfunction (which might have represented an obvious reason for avoiding a right-sided vaccination, and/or a potential alternative cause for the injury alleged). Additionally, the medical record evidence starting just *eight days post-vaccination*[7] support the conclusion that Petitioner had suffered a right-sided shoulder

---

[6] Exhibit 1 is improperly characterized as an "affidavit," because it is not notarized. However, the statement at Exhibit 1 is declared as true and correct pursuant to 28 U.. § 1746 (providing that such a statement may be given like force and effect as an affidavit).

[7] In this case, Petitioner's very early reporting and evaluation of a vaccine shoulder injury is distinguishable from other cases such as *Daugherty v. Sec'y of Health & Hum. Servs.*, No. 19-1519V, 2024 WL 3416068 at *3-5 (Fed. Cl. Spec. Mstr. June 5, 2024) (in which a handwritten "left arm" notation outweighed reporting of a right-sided vaccination, reported only four months later), cited in Response at 5.

injury, which he believed was caused by misadministration of the vaccine on his right side. The medical evaluations documented an objective injury which warranted treatment including orthopedic surgery. In short, all of the medical record evidence *other than the VAR* support the alleged right-sided vaccine administration. Reply at 15-16. I conclude that the case-specific evidence and arguments preponderate in Petitioner's favor, thereby supporting a finding that the October 17, 2022 flu vaccine was administered in his right arm/ shoulder.

## IV.      Remaining Table SIRVA QAI Criteria and Statutory Requirements

Petitioner's success in meeting the remaining QAI requirements is not disputed, and I also find that they have been preponderantly satisfied. The record does not reflect any potentially explanatory prior history of alternative conditions that would better explain Petitioner's alleged right-sided SIRVA. More likely than not, his right shoulder pain began within 48 hours after the vaccination; the right shoulder was later documented to have range of motion deficits; and those symptoms were localized to the right shoulder.

The statutory requirements applicable to all claims are also preponderantly established. Petitioner received a covered vaccine in the United States. Ex. 2 at 1. He experienced residual effects of the right shoulder injury for more than six months. *See, e.g.*, Ex. 5 at 6-8; Ex. 1 at ¶¶ 26-28. And he states that he has not pursued or received any other compensation for this injury. Ex. 1 at ¶¶ 57-58. Thus, Petitioner is entitled to Vaccine Program compensation.

## Conclusion and Damages Order

For the foregoing reasons, Petitioner is entitled to compensation for a right-sided SIRVA. **Thus, this case is now in the damages phase**.

**The parties are reminded that they should not retain a medical expert, life care planner, or other expert without consulting with each other and the Chief Special Master.**[8] If counsel retains an expert without so consulting in advance, reimbursement of those costs may be affected.

---

[8] If the parties feel that a life care plan is necessary, they are encouraged to consider the possibility of engaging a joint life care planner. Selecting a joint life care planner can often cut months from the time period between an entitlement determination and the award of damages. With a joint life care planner, the damages process moves more quickly and with less contention. When a joint life care planner is not used, the life care planners should work together to coordinate interviews and site visits in order to avoid delay and duplication of effort.

As discussed during the February 20, 2026 proceeding, this case's damages appear to be limited in scope. Petitioner's right shoulder was the subject of surgery, but that intervention was apparently followed by limited post-operative treatment and a substantial recovery, with the medical course ending within about 15 months post-vaccination. During the argument, I estimated that an appropriate award for past pain and suffering might be somewhere between $100,000.00 - $140,000.00 – although in assessing damages, the parties should of course carefully review the facts of this case against those from past cases that involved reasoned determinations of SIRVA pain and suffering. Petitioner should also not delay in substantiating any claimed out-of-pocket medical expenses or any existing lien. The case is unlikely to involve a claim for lost earnings or ongoing medical treatment.

**Within 60 days, by no later than Friday, April 24, 2026,** Petitioner shall file a Status Report updating me on the parties' progress toward informally resolving the issue of damages.** The Status Report shall specifically state the date by which Petitioner provided or intends to provide a demand for damages to Respondent. Additionally, Petitioner shall confirm whether any Medicaid lien exists, and if so, state the date by which Petitioner anticipates providing Respondent a letter from the appropriate state agency verifying the amount of the lien. As always, Petitioner should continue to file any updated medical records as they become available.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master